IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MELVIN L. BAILEY, JR., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-362-TCK-SH |
| | ) | |
| WENDELL FRANKLIN, in his official | ) | |
| Capacity as Chief of the Tulsa | ) | |
| Police Department, JUSTIN FINNEY, | ) | |
| in his personal and official capacity, | ) | |
| and JUSTIN MCALPIN, in his | ) | |
| personal and official capacity, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is the Defendants' Wendell Franklin, Justin Finney, and Justin McAlpin's

Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). Plaintiff

filed a Response (Doc. 9), and Defendants filed a Reply. (Doc. 11).

### I. BACKGROUND

Plaintiff Melvin L. Bailey, Jr. (hereafter "Plaintiff" or "Mr. Bailey") has initiated the

present lawsuit as a result of a traffic stop conducted by Tulsa Police Department Officers Justin

Finney and Justin McAlpin in Tulsa, Oklahoma on February 19, 2020. Their encounter was

captured on video by the officers' body-worn cameras. Officers Finney and McAlpin contend they

stopped Mr. Bailey for failing to stop at a stop sign. They allege that as they were attempting to

stop Mr. Bailey, he "slow rolled" and did not stop immediately. Defendants state that when

suspects do not stop immediately, it can lead an officer to believe they are using the time to hide

guns or drugs. The officers identified Mr. Bailey as a certified gang member. They ran a search on

their computer to determine his criminal history and were also aware of his prior conduct as recent

as 2017 where he created a Facebook post that appears to authorize "hits" on certain individuals. Additionally, they allege they smelled the odor of marijuana coming from inside Mr. Bailey's vehicle. Mr. Bailey explained this was because he was certified by the State of Oklahoma to grow marijuana and was coming from his growing establishment. The officers conducted a search of Mr. Bailey and his vehicle. After the search, Mr. Bailey was allowed to leave without an arrest or citations.

Chief Franklin's involvement in this case is limited to the fact that he is the current Chief of Police, and was the Chief of Police on the date Mr. Bailey and his vehicle were searched. Mr. Bailey has not alleged any facts which would support a claim that Chief Franklin was directly involved in the February 19, 2020 encounter with the officers.

In his First Amended Complaint, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the officers violated his Fourth Amendment rights in their official and individual capacities. He claims they conducted their search without reasonable suspicion or probable cause. Plaintiff also asserts official capacity claims under *Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658, 691 (1978) against the officers and Chief Franklin. Plaintiff further asserts entitlement to exemplary damages against the officers.

## II. MOTION TO DISMISS STANDARD

A Complaint must contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Complaint must contain enough "factual matters, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). The trial court must insist the plaintiff put

forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe [the] plaintiff has a reasonable likelihood of mustering factual support for [the] claims." *Id.* at 1247.

"The nature and specificity of the allegations required to state a plausible claim will vary based on the context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). A plaintiff is not entitled to file a bare bones complaint and fill in the necessary facts after discovery is complete. *London v. Beaty*, 612 Fed. Appx. 910, 916 (10th Cir. 2015). The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins*, 519 F.3d at 1249.

The final determination of whether a warrantless search was reasonable under the Fourth Amendment is a question of law. *United States v. Botero–Ospina*, 71 F.3d 783, 785 (10th Cir. 1995). In the context of § 1983 claims, "plausibility" refers to the scope of the allegations in the complaint. If they are "so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or "a mere formulaic recitation of the elements of a cause of action" then such allegations may be inadequate to overcome a motion to dismiss. *Id.* at 1247-48. Importantly, a complaint must present factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Further, in the instant case the Court may consider the body-worn camera video pertaining to the incident and attached court records without converting this motion to dismiss to a motion for summary judgment. Although, generally, the sufficiency of a complaint must rest on its contents alone, there are three exceptions to this principle. See, *Casanova v. Ulibarri*, 595 F.3d

1120, 1125 (10th Cir. 2010). First, the Court may consider documents that the complaint incorporates by reference. See, *Ltd Tellabs, Inc. v. Makor Issues & Rights*., 551 U.S. 308, 322 (2007). Second, the Court may consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002). Under those circumstances, a defendant may submit an indisputably authentic copy which may be considered in ruling on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384 (10th Cir.1997). Third, the Court may consider "matters of which a court may take judicial notice." *Tellabs, Inc.,* 551 U.S. at 322; *U.S. v. Mendoza*, 698 F.3d 1303, 1307 (10th Cir. 2012) ("dockets are generally public documents" which courts may take judicial notice of); *Turner v. City of Tulsa*, 525 Fed.Appx. 771 (10th Cir.2013) (attachment of City Charter to motion to dismiss does not require conversion into a motion for summary judgment); see also Fed. R. Evid. 201.

Two exceptions are at play here: incorporation by reference of the body-worn camera video referred to in Plaintiff's First Amended Complaint is central to his claim and judicial notice of court dockets. Prior to filing this lawsuit, Plaintiff requested and was provided with the officer's body-worn camera video from the subject traffic stop. In his First Amended Complaint, Plaintiff refers to the video throughout as he provides quotes and a description of what occurred at the scene. (First Amended Complaint, Doc. 5, Paragraphs 16-37). He also provides a link to where the video can be viewed in Paragraph 38. As such, since the video is referred to and is central to Plaintiff's claims against the Defendants, the Court may consider the body-worn camera video without converting this motion to a motion for summary judgment.

The same is true regarding the court records which reflect Mr. Bailey's criminal history. The Court may take judicial notice of records from other courts, particularly when the records

4

directly pertain to this incident involving Mr. Bailey. The records show that Mr. Bailey has had prior charges including two separate charges of assault and battery, aggravated trafficking in illegal drugs, burglary, first-degree murder, assault and battery with a dangerous weapon, and shooting with intent to kill. (Doc. 8, Exhibits 1-7).

### III. ANALYSIS

### A. Qualified Immunity

Claims brought against municipal police officers in their "individual capacity" are subject to the defense of qualified immunity. Because qualified immunity is "an immunity from suit rather than a mere defense to liability…it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The United States Supreme Court has determined that "resolving immunity questions at the earliest possible stage in litigation" is important. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). The doctrine shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), preserving a balance between "vindication of citizens' constitutional rights and ... public officials' effective performance of their duties," *Ziglar v. Abbasi*, ___U.S.___, 137 S.Ct. 1843, 1877, 198

L.Ed.2d 290 (2017) (internal quotation marks and citation omitted). The dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa,* ___ U.S.___, 137 S.Ct. 2003, 2007, 198 L.Ed.2d 625   (2017) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, and the plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. . . . If a favorable view of the facts alleged show the violation of a constitutional right, the next sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct.  When the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Mitchell v. Forsythe*, 473 U.S. 511, 526 (1985).

In *United States v. Windom*, the Tenth Circuit stated, "[W]e have held that 'the governmental interest in the safety of officers *outweighs* the individual's Fourth Amendment interest when an officer has an objective basis to believe that the person being lawfully detained is armed and dangerous.'"  863 F.3d 1322, 1331 (10th Cir. 2017) (emphasis in original) (quoting *United States v. King*, 990 F.2d 1552, 1561) (10th Cir. 1993).  "Indeed, when an officer has a reasonable belief that a suspect he is investigating at close range is armed, 'it would appear to be clearly *unreasonable* to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon to neutralize the threat of physical harm.'" *Id.* (emphasis in original) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)).

"In evaluating whether the precautionary steps taken by an officer [during a stop] were reasonable, the standard is objective—would the facts available to the officer at the *moment of the seizure* warrant a man of reasonable caution in the belief that the action taken was appropriate."

6

*United States v. Mosley,* 743 F.3d 1317, at 1328-29) (10th Cir. 20140) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).

**1. The Detention of Plaintiff and his Vehicle was Lawful.**

Plaintiff alleges that the detention and search of his person and vehicle by Officers Finney and McAlpin constituted an unreasonable search and seizure under the Fourth Amendment to the United States Constitution. While considered a seizure, an investigative detention does not need to be supported by probable cause; instead, it must only be justified by a reasonable and articulable suspicion that the person stopped has committed a crime or is about to do so. *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation...." *United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). In Officer McAlpin's body-worn camera video (Doc. 8, Exhibit 1), Officer McAlpin can be seen explaining to Mr. Bailey that he was stopped because they had observed him fail to stop at a stop sign. The failure to stop was also recorded on the video. After the officers initiated the stop, Mr. Bailey slow rolled his vehicle a short distance.  Officer McAlpin then explains to Mr. Bailey that  they were looking for an Avalanche, which drew their attention to his vehicle, which was also an Avalanche. Therefore, the detention of Plaintiff and his vehicle was valid.

**2. The Search of Plaintiff and his Vehicle were Reasonable.**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the U.S. Supreme Court upheld the validity of a protective search for weapons in the absence of probable cause to arrest because it found it is unreasonable to deny a police officer the right "to neutralize the threat of physical harm" when he possesses an articulable suspicion that an individual is armed and dangerous. *Id.* at 24.

In *Michigan v. Long*, 463 U.S. 1032 (1968), the U.S. Supreme Court considered the search of a suspect and his vehicle by police during a traffic stop. It found that the police officers had reason to believe the vehicle contained weapons potentially dangerous to the officers and held that the protective search of the passenger compartment was reasonable "under the principles articulated in *Terry* and other decisions of this Court." *Id.* at 1035. The Court further explained:

> Examining the reasonableness of the officer's conduct in *Terry*, we held that there is "'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Terry*, 392 U.S., at 21. Although the conduct of the officer in *Terry* involved a "severe, though brief, intrusion upon cherished personal security," *Id.* at 24–25, we found that the conduct was reasonable when we weighed the interest of the individual arrest against the legitimate interest in "crime prevention and detection," *Id*. at 22, and the "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they lack probable cause for an arrest." *Id.* at 24.

*Long*, 463 U.S. at 1046-1047.

The Court in *Long* Court found that "*Terry* need not be read as restricting the preventative search to the person of the detained suspect." *Id*. at 1047. The Court has applied *Terry* to specific factual situations and has recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers. *Id.* In *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), the Court held that police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous. Its decision rested in part on the "inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id*. at 110.

In *U.S. v. Palmer*, 360 F.3d 1243 (10th Cir. 2004), the Tenth Circuit Court of Appeals cited to *Michigan v. Long* and upheld the detention and search of a suspect and his vehicle conducted

by a Tulsa Police officer with facts similar to those in the instant case. There, the officer stopped a suspect for speeding in a school zone. As he was attempting to pull him over, the suspect did not immediately stop. He "slow rolled" and passed about 25 empty parking spaces and the officer observed the suspect moving back and forth in his seat. He obtained the suspect's driver's license and conducted a record check on his laptop computer, which showed that the suspect was an ex-convict and warned that he had been armed and dangerous. *Id.* at 1245. The officer called for backup. He then removed the suspect from the vehicle, patted him down, and placed him in the patrol car while a search of the vehicle was conducted. The officer searched the vehicle and ultimately removed the keys from the ignition and unlocked the glove box to find a semiautomatic handgun.

The Court found that the officer had a reasonable suspicion that the suspect was dangerous and could gain control of a weapon. The Court found that the observations of the officer indicated that the suspect was trying to delay his encounter with the officer until he could hide something in his glove box. The Court then stated that when the license check revealed that the suspect was an ex-convict who had been considered armed and dangerous, the officer had more than sufficient evidence to support a reasonable suspicion that the suspect was dangerous and was hiding a weapon. *Palmer,* at 1246.

As the uncontroverted record reveals, Officers Finney and McAlpin lawfully stopped Mr. Bailey's vehicle for the traffic violation of failing to stop at a stop sign. As shown on the video (Doc. 8, Exhibit 1), Mr. Bailey "slow rolled" and did not immediately pull over. Officer Finney points this out as he and Officer McAlpin are talking and checking Mr. Bailey's license and criminal history. The Officers are also visibly surprised after stopping Mr. Bailey and learning his identity. In addition to confirming Mr. Bailey's criminal history, and that he is a certified gang

member (Doc. 8, Exhibits 2 – 7), Officer McAlpin also conveys to Officer Finney that he is aware of Mr. Bailey's Facebook post after the Crawford Park shooting in the Summer of 2017 where he "ok'd the blue light" on a couple of people. Officer McAlpin explains that giving the "blue light" on someone is the term used by the Hoover Crips which is synonymous with giving the "green light" to put a hit on someone. "Some degree of gang affiliation is an additional fact that may support the reasonableness of a precautionary frisk by officers." *United States v. Windom*, 863 F.3d at 1333 citing *United States v. Garcia*, 459 F.3d 1059, 1066 (10th Cir. 2006).

Further, Mr. Bailey was not handcuffed as he was shown on the video using his cell phone to call his attorney while the officers searched his vehicle. The officers also took a screen shot of their computer to show Mr. Bailey which revealed the information they used to confirm his membership in the Hoover Crips.

In light of the record presented in this case, the Court finds Plaintiff's constitutional rights were not violated. The fact that Mr. Bailey did not immediately stop when the officers tried to pull him over reasonably lead them to believe he may have been using that time to hide drugs or weapons. His license check revealed prior charges of crimes that included murder, shooting with intent to kill, drug trafficking, and assault and battery. They were also prudent to consider the activity from 2017 that showed he still had influence within the gang community. Officers are not be required to "take a suspect's word" that he is no longer a threat. *Id*. Like the officer in *Palmer*, Officers Finney and McAlpin had sufficient evidence to support a reasonable and articulable suspicion that Mr. Bailey was dangerous and could have a weapon. When balancing the interest of the officers' safety and crime detection against the brief invasion the search entailed, it was reasonable and did not violate Plaintiff's rights guaranteed by the Fourth Amendment.

**IV. MUNICIPAL LIABILITY**

A local government may be held liable under 42 U.S.C. § 1983 only when a constitutional violation was inflicted pursuant to a government policy or custom. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). In addition to pleading the existence of an unconstitutional custom or policy, a plaintiff must also plead facts showing (1) a direct causal link between the municipal action and the deprivation of federal rights and (2) that the municipal action was taken with deliberate indifference to its known or obvious consequences. See *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 759 (10th Cir. 2014) (citations omitted).

Here, Plaintiff cannot prove a constitutional violation since the detention and search were done in accordance with the Fourth Amendment. Consequently, Plaintiff cannot demonstrate the first element of a municipal liability claim -- that a City employee committed an underlying constitutional violation. Without a constitutional violation, the municipal liability claim fails, and without factual support, Plaintiff's allegations are conclusory and insufficient to support the alleged *Monell* claims against, the officers in their official capacities and Wendell Franklin, in his official capacity as Chief of Police of the Tulsa Police Department. [1]

**V. CONCLUSION**

The Court finds Plaintiff's Complaint fails to meet the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff has not set forth factual allegations sufficient to show a constitutional violation. Further,

---

[1] Plaintiff has asserted claims against Chief Franklin in his "official capacity." Those claims are redundant of his official capacity claims against Officers Finney and McAlpin. See *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, (1978) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")).

because there was no violation of Plaintiff's constitutional rights by the officers, there is also no

municipal liability. Accordingly, Defendants' Motion to Dismiss is granted.


**IT IS SO ORDERED this 8th day of June, 2021.**


TERENCE C. KERN
United States District Judge